UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ANDY DEWAYNE DISNEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:18-cv-00103-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner Of Social Security, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Andy Dewayne Disney seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied his claim for supplemental security income and disability insurance benefits. Mr. Disney brings this action pursuant to 42 U.S.C. § 405(g), alleging by the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Mr. Disney's Motion for Summary Judgment and **GRANT** the Commissioner's.

I

A

Plaintiff Andy Dewayne Disney initially filed an application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on November 10, 2014, alleging disability beginning on November 15, 2010. [Transcript (hereinafter, "Tr.") 11.] Administrative Law Judge Issacs denied this request on January 20, 2015, and again denied it upon reconsideration on March 10, 2015. *Id.* Mr. Disney filed a request for a hearing on April 7, 2015, which was held on April 4, 2017. *Id.* On July 6, 2017, the ALJ issued a partially

favorable decision. *Id*. at 18. The Appeals Council denied Mr. Disney's request for review on February 14, 2018. *Id.* at 1. Mr. Disney was previously denied benefits by an ALJ on August 9, 2013.

To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claim) *with* 20 C.F.R. § 416.920 (claims for supplemental security income).[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." C.F.R. § 404.1530(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assess an individual's ability to perform certain physical and metal work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through Step Four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At Step Five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At the outset of this case, the ALJ determined that Mr. Disney met the insured status requirements of the Social Security Act through December 31, 2015. Tr. 14; *see also* 20 C.F.R. § 404.131. Then at Step One, the ALJ found Mr. Disney had not engaged in substantial gainful activity since the alleged disability onset date, November 15, 2010, through his date last insured. Tr. 14. At Step Two, the ALJ found Mr. Disney to suffer from the severe impairment of degenerative disk disease. *Id.* At Step Three, the ALJ determined his combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416. *Id.* Before moving on to Step Four, the ALJ considered the record and determined that Mr. Disney possessed the following residual functioning capacity:

> [Mr. Disney] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with lifting/carrying 20 pounds occasionally and 10 pounds frequently; standing/walking no more 30 minutes at a time for 2 hours in an 8-hour day; sitting 30 minutes at a time for 6 hours in an 8-hour day; no more than occasional stooping, kneeling, crouching, crawling, and climbing ramps/stairs; no balancing on uneven surfaces; no overhead reaching bilaterally and use of an assistive device for walking.

*Id.* After explaining the RFC, the ALJ found at Step Four that, based on his RFC, age, education, and work experience, Mr. Disney was not capable of performing past relevant work as

a scoop operator or foreman since August 10, 2013, but was capable of performing other jobs existing in the national economy until his age category changed on April 3, 2017. *Id.* at 16–18. Accordingly, the ALJ found at Step Five that Mr. Disney was not disabled for Title II Disability Insurance Benefits because his date last insured expired on December 31, 2015, but he was found disabled on April 3, 2017 for Title XVI Supplemental Security Benefits because his age status changed to an individual closely approaching advanced age on that date. *Id.* at 18.

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's

decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## II

Mr. Disney presents only one argument to this Court as grounds for relief from the ALJ's unfavorable decision. Specifically, he argues that the ALJ failed to properly evaluate Listing 1.04 (spinal disorder). [R. 13-2 at 4.] For the reasons set forth below, Mr. Disney's argument does not warrant a reversal of the ALJ's determination.

Mr. Disney argues he should have been found disabled at Step Three of the disability analysis because his condition qualifies as an impairment under Listing 1.04. *Id.* at 4-7. At Step Three the ALJ is tasked with determining whether a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If the impairments do "meet or equal" one of those listed impairments, the claimant is deemed "disabled." *Id*. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (quoting *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)) (emphasis in original). For a claimant to demonstrate that his "impairment is the *medical equivalent* of a listing," he must demonstrate that the impairment is "at least equal in severity and duration to the criteria of any listed impairment." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414-15 (6th Cir. 2011) (citing 20 C.F.R. § 416.926(a); 20 C.F.R. § 404.1526(a)). As the Sixth Circuit has explained, "[a]n administrative law judge must compare the medical evidence with the

5

requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Id*. Mr. Disney had the burden of showing that his impairments were equal or equivalent to a listed impairment. *Malone*, 507 F. App'x at 472 (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). "To meet that burden [Mr. Disney] was required to point to medical signs and laboratory findings that are at least equal to a listed impairment in duration and severity." *Id*.

Mr. Disney now takes issue with the ALJ's discussion of whether his impairment meets or equals listing 1.04, which is reprinted below:

> **1.04** *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>>
>> OR
>>
>> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>>
>> OR
>>
>> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, App. 1 (*Social Security Listing 1.04*). In his written decision, the ALJ addressed whether Mr. Disney's impairments rendered him disabled under this listing as follows:

> The record contains MRI revealing three-level degenerative lumbar disc disease, most marked at L5-S1, with some 50% disc space narrowing with a posterior bulge toward the left lateral recess. While there was lateral recess stenosis at L5-S1, left, there was no left L5 radiculopathy. Exhibit B3F. The record does not otherwise contain evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and positive straight-leg raising test (sitting and supine). Nor is there evidence of spinal arachnoiditis, lumbar spinal stenosis resulting pseudoclaudication, and inability to ambulate effectively. I note the claimant demonstrated only back pain with right straight leg raise at consultative examination and was able to ambulate within the room without a cane. Exhibit B1F.

[Tr. 14]. Simply, the ALJ concluded that Mr. Disney could not show evidence of nerve root compression to satisfy Listing 1.04A. *Id*. But Mr. Disney argues that finding was contrary to the record and not supported by substantial evidence. [R. 13-2 at 6.]

To meet all qualifications of Listing 1.04, Mr. Disney must demonstrate a spinal disorder resulting in the compromise of a nerve root or the spinal cord, a neuro-anatomic distribution of pain, limitations in the motion of his spine, motor loss (atrophy with associated muscle weakness or muscle weakness), sensory or reflex loss, and evidence of a positive straight-leg raising test (sitting and supine). 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A). Contrary to the ALJ's findings, Mr. Disney argues that his consultative examination by Dr. Kathleen M. Monderewicz and MRI show that he had nerve root or spinal cord damage and therefore met the qualifications for a Listing 1.04. [R. 13-2.]

At a consultative examination on December 23, 2014, Dr. Monderewicz, found that he suffered from chronic lumbosacral back pain with left lumbar radiculopathy; decreased sensation over the left L5-S1 dermatomes; Achilles deep tendon reflexes remained normal; left calf measured 2 cm smaller in circumference compared to right calf; hip range of motion appeared limited by low back pain; mild scoliosis on visual inspection of the thoracic spine; non tender decreased range of motion of the cervical spine; possible mild patellar tendinitis and

7

degenerative changes of the left knee, but knee range of motion mainly worsened low back pain. Tr. 301. Dr. Monderewicz also found that Mr. Disney ambulated with a left limp and used a cane for ambulation. Tr. 298. During that same examination, she found that Mr. Disney tested positive to the straight leg raising test in the right leg at 60 degrees sitting and 50 degrees supine; the Left straight leg raising test was positive in the sitting position at 45 degrees and positive in the supine position at 40 degrees. Tr. 300. And, Dr. Monderewicz discovered that Mr. Disney's left calf was two centimeters smaller than the his right and he had weak, 4/5, left lower extremity motor strength. Tr. 301.

Then, an MRI performed on July 8, 2015, showed: a mild narrowing of the disc space with some degeneration of the disc with mild circumferential bulge with moderate spinal stenosis with hypertrophy of the facet joints at L3 and L4; a mild circumferential bulge at L4-L5 with mild to moderate spinal stenosis with some hypertrophy of the facet joints bilaterally; and a narrowing of the L5 some disc with degeneration of the disc with mild to moderate left-sided broad based bulge with mild to moderate spinal stenosis with some compromise of the left intervertebral foramina. Tr. 304-05. Mr. Disney argues that these two pieces of evidence taken together support a finding that his disability was the equivalent of a Listing 1.04.

Yet, the ALJ's decision against Mr. Disney was supported for three reasons. First, Dr. Monderewicz did not suggest that Mr. Disney satisfied a listing category or was unable to work. Tr. 14, 16, 301. And, a state agency physician who reviewed Dr. Monderewicz's report found that the Mr. Disney retained the ability to do a range of light work—an implicit rejection that he fit the Listing 1.04 requirements. Tr. 107-08. Second, Mr. Disney did not show "evidence of nerve root compression" as required by a Listing 1.04A. Tr. 14, 16. Indeed, Dr. Bean, the reviewing neurologist, did not note any nerve root compression in his review of the imaging. Tr.

8

14, 16, 306-07. Here, the burden is on Mr. Disney to demonstrate that his impairments were equal or equivalent to a listed impairment. *Malone*, 507 F. App'x at 472 (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). "To meet that burden [Mr. Disney] was required to point to medical signs and laboratory findings that are at least equal to a listed impairment in duration and severity." *Id*. Even if he can demonstrate the other criteria of Listing 1.04, Mr. Disney does not adequately show evidence of nerve root compression. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id*. at 530 (emphasis in original); *see also Malone*, 507 F. App'x at 472 (quoting *Zebley*, 493 U.S. at 530). Third, Mr. Disney does not present evidence that his impairment satisfied the twelve-month durational requirement. For example, Mr. Disney was found to have: intact sensation and motor strength by Dr. Bean [Tr. 306-07]; a normal neurological exam in February 2016 [Tr. 341]; and no documented neurological deficits by the Kentucky Pain Management Services. Tr. 311-36, 344-46, 348-56. Each of these facts undermines Mr. Disney's claimed disability and taken together support the ALJ's ruling. See 20 C.F.R. § 404.1525(c)(3) ("We will find that your impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement."); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783-84 (6th Cir. 2017), *cert. granted on different issue*, 138 S. Ct. 2677 (June 25, 2018)

While the ALJ's discussion at Step Three might leave something to be desired, the ALJ's conclusions, allow for meaningful judicial review. Ultimately, after reviewing the record in its entirety, it cannot be said that his conclusion that Listing 1.04 did not apply is unsupported by substantial evidence. Additionally, the Court finds that Mr. Disney's failure to provide enough

9

evidence of nerve root compression prohibits him from meeting the criteria established in Listing 1.04.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Anthony Dewayne Disney Motion for Summary Judgment [R. 13] is **DENIED**, but the Commissioner's Motion for Summary Judgment [R. 15] is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 22nd day of May, 2019.

Gregory F. Van Tatenhove
United States District Judge